Filed in Open Court
6/23/2025
Skyler B. O'Hara
By _M. Beaton_
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KEVIN RUSE, <br><br> Defendant. | Case No. 24-20075-HLT |

## PLEA AGREEMENT

The United States of America, by and through Assistant United States Attorney, Trent M. Krug, and Kevin Ruse, the defendant, personally and by and through his counsel, Casey Y. Meek, hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the Indictment, charging a violation of Title 21, United States Code, Sections 843(a)(3) and (d), that is, knowing and intentional possession of oxycodone, a controlled substance, by misrepresentation, deception, and subterfuge. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count 1 of the Indictment to which he has agreed to plead guilty is not more than 4 years imprisonment, not more than 1 year of supervised release, not more than a $250,000 fine, a $100.00 mandatory special assessment, and restitution as ordered by the Court. The parties request a separate hearing to determine the Indictment's Forfeiture Notice related to the defendant's Kansas State Board of Pharmacy license.

2.      **Factual Basis for the Guilty Plea.**  The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

Kevin Ruse (hereinafter referred to as "the defendant") obtained his Pharmacist License in July 2016. In mid-2022, the defendant acquired the Pharmacist-in-Charge position at Cosentino's Market Pharmacy, in Overland Park, Kansas. The defendant was the only full-time employee, worked alone, and had authorization to order controlled substances for the pharmacy. Beginning in August 2023, the defendant began using various controlled substances after issues developed in his marriage. After noticing discrepancies with the pharmacy's inventory, Cosentino's Pharmacy Director conducted an audit and identified the loss/diversion of multiple controlled substances. Cosentino's representatives also viewed video surveillance footage, which showed the defendant ingesting controlled substances while on duty.

On February 14, 2024, Cosentino's management conducted an interview with the defendant. During the interview, the defendant admitted diverting drugs and provided the following written statement: "I am sorry and apologize for my actions. The (behavior will) cease immediately and (I) wish to continue working hard for the company. Personal life stress has led to poor choices and my ability to cope has become a challenge. I have prescriptions for diazepam and sertraline to manage my anxiety and stress and will restart my work with my therapist immediately."

Thereafter, Cosentino's management terminated the defendant and notified DEA Diversion about their interview and investigation. After reviewing the provided records, and viewing multiple days of video surveillance footage, DEA investigators confirmed the diversion of controlled substances. On May 28, 2024, DEA Diversion investigators conducted an interview with the defendant. He confessed to the diversion of controlled substances and explained how he opened sealed packages and replaced their contents. The defendant said he abused the controlled substances during his shifts, but disagreed with the loss inventory the pharmacy provided to DEA. At the conclusion of DEA's final review, investigators tallied the diverted drug descriptions and quantities in the tables below.

| Trade Name | Quantity Lost |
|---|---|
| ACETAMINOPHEN-COD #4 TABLET | 100EA |
| CARISOPRODOL 350 MG TABLET | 125EA |
| CLONAZEPAM 2 MG TABLET | 426EA |
| OXYCODONE HCL (IR) 10 MG TAB | 443EA |
| OXYCODONE HCL (IR) 15 MG TAB | 300EA |
| OXYCODONE HCL (IR) 5 MG TABLET | 100EA |
| OXYCODONE HCL (IR) 5 MG TABLET | 200EA |
| OXYCODONE-ACETAMINOPHEN 7.5-325 MG TABLET | 65EA |
| OXYCODONE-ACETAMINOPHEN 10-325 MG TAB | 10EA |
| TRAMADOL HCL 50 MG TABLET | 2,171EA |
| TRAMADOL HCL 50 MG TABLET | 600EA |
| TRAMADOL HCL 50 MG TABLET | 648EA |
| CLONAZEPAM 1MG ODT | 45EA |
| CLONAZEPAM 2MG TABLET | 165EA |
| TRAMADOL HCL 50MG TABLET | 482EA |
| TRAMADOL HCL 50MG TABLET | 100EA |

      OXYCODONE-ACETAMINOPHEN 5-325 MG TABLET      200EA

Final Totals:

| Drug | Dosage Units | MG Quantity |
|---|---|---|
| Acetaminophen-Codeine | 100 | 6,000 |
| Carisoprodol | 125 | 43,750 |
| Clonzepam | 636 | 1,227 |
| Oxycodone | 1,318 | 12,017 |
| Tramadol | 4,001 | 200,050 |

      After the defendant's termination, Cosentino's new pharmacist discovered additional losses when she found two boxes of what should have been blister packaged oxycodone/acetaminophen tablets had been opened and resealed, and the contents replaced with non-controlled potassium tablets and sumatriptan (a non-controlled migraine medication).

      The defendant admits and agrees that between August 1, 2023 and February 14, 2024, he intentionally acquired and obtained possession of oxycodone, a controlled substance, by misrepresentation, deception, and subterfuge.

      3.    **Application of the Sentencing Guidelines.**  The parties request that the Court apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence and impose a sentence consistent with the Guidelines. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable evidence, including hearsay. Nothing in this section prevents the parties from filing objections to the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines. The parties agree that the Court will determine the final Guideline range. The parties understand this Plea Agreement binds the parties only and does not bind the Court.

      4.    **Relevant Conduct.**  The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all other uncharged related criminal activity, will be considered as relevant conduct for purposes of

calculating the offense level for the count(s) of conviction, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

5.  **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

(a) to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment;

(b) to not oppose a probationary sentence, as the parties anticipate the defendant's sentence will fall within Zone A of the Sentencing Table; and

(c) to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if his offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds he qualifies for a two-level reduction, the United States will move at the time of sentencing for an additional one-level reduction for acceptance of responsibility because he timely notified the Government of his intention to enter a plea of guilty.

The United States' obligations under this paragraph are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, the United States shall not be bound by this Paragraph, and may pursue any additional charges

4

arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this Plea Agreement.

6. **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence he will receive.

7. **Withdrawal of Plea Not Permitted.** The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which he does not agree, he will not be permitted to withdraw his guilty plea.

8. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

9. **Forfeiture of Assets.** The parties are requesting a separate hearing to determine whether a nexus can be established between the property (the defendant's Kansas State Board of

Pharmacy license (1-100579)) for which the government is seeking forfeiture and the crime, by a preponderance of the evidence.

10.     **Restitution**. The defendant knowingly and voluntarily agrees and consents to pay any restitution amount the Court may impose, including restitution to victims and for loss amounts beyond the offense of conviction, pursuant to 18 U.S.C. § 3663(a)(3).

11.     **Identification of Assets and Agreement Concerning Monetary Penalties (Restitution, Fines, Assessments) and Forfeiture.** The defendant agrees to cooperate fully with the United States Attorney's Office and specifically agrees as follows:

- (a) Defendant agrees to execute a financial statement provided by the United States Attorney's Office and to update the statement with any material changes within 30 days of any such change. Defendant further agrees to provide all supporting documentation, including, but not limited, to copies of federal tax returns. The defendant agrees to disclose all assets in which defendant has any interest or which defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, as well as any transfer of assets that has taken place within six years preceding the entry of the judgment in this criminal case. Additionally, the defendant agrees to periodically execute an updated financial statement at the request of the United States Attorney's Office until such time the judgment debt is paid in full.

- (b) Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. Defendant agrees the United States Attorney's Office may subpoena any records it deems relevant to conduct a full financial investigation. Defendant agrees to discuss or answer any questions by the United States relating to its financial investigation.

- (c) Defendant agrees to submit to an examination prior to and/or after sentencing, which may be taken under oath, and/or may include a polygraph examination.

- (d) Defendant agrees that any waivers, consents, or releases executed for the United States Probation Office for purposes of preparation of the Presentence Report may be provided to the United States Attorney's Office. All information defendant provided to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office.

6

(e) Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control, without written approval from the United States Attorney's Office.

(f) Defendant agrees that whatever monetary penalties the Court imposes (including any fine, restitution, assessment, or forfeiture judgment), will be due and payable immediately and subject to immediate enforcement by the United States. Should the Court impose a schedule of payments, he agrees that the schedule of payments is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If defendant is incarcerated, defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

(g) If defendant posted funds as security for defendant's appearance in this case, defendant authorizes the Court to release the funds to the Clerk of the United States District Court to be applied to the criminal monetary impositions at the time of sentencing.

(h) Defendant waives any requirement for demand of payment on any restitution, fine, assessment, or forfeiture judgment entered by this Court.

(i) Defendant agrees to notify the United States Attorney's Office within 30 days of any change of address or other contact information until the judgment debt is paid in full.

(j) Defendant agrees the terms of this agreement shall be incorporated into the Judgment in a Criminal Case.

(k) Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default, and agrees to be immediately included in the Treasury Offset Program allowing federal benefits and payments to be offset and applied to the balance of criminal monetary penalties.

(l) Defendant agrees that noncompliance with any of the terms set forth in this paragraph will result in a continuance of the sentencing hearing.

12. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal

7

the conviction and sentence imposed. The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

13. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

14. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney

takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

15. **Parties to the Agreement.** The defendant understands this Plea Agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

16. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress, or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

_____     Date: 6/20/25
Trent M. Krug, #19454
Assistant U.S. Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730
(913) 551-6541 (fax)
Trent.Krug@usdoj.gov

9

*David P. Zabel*             Date: 6-20-25
D. Christopher Oakley, #19248
Assistant United States Attorney
Supervisor

                            Date: 6-20-25
Kevin Ruse
Defendant

                            Date: 6-20-25
Casey Y. Meek
Joseph, Hollander & Craft, LLC - KCMO
926 Cherry Street, Suite 200
Kansas City, MO 64106
(816) 673-3900
(855) 955-1318 (fax)
Email: cmeek@josephhollander.com
Counsel for Kevin Ruse